May it please the Court, good morning. My name is Drew Herman and I represent the Appellants, a group of servers and bartenders who were paid $2.15 per hour while working at the Ridge. This case turns on a straightforward question. Can an employer claim the FLSA's tip credit without proving that all tips from its tip pool were actually distributed to customarily and regularly tipped employees? The District Court said yes, but that's not the law. The text of Section 203M2A of the FLSA requires the Ridge to affirmatively show that all tips were distributed to customarily and regularly tipped employees. Not merely that the employer didn't keep any of the tips for itself. The Ridge had the burden to prove compliance with the tip credit. Instead, it offered no evidence showing that the leftover tips from the tip pool ever made it to the bartenders. In fact, the Court expressly found there was a gap in the evidence. It couldn't trace the tips to their final destination. And yet, the Court still concluded that because the Ridge didn't keep any of the tips for itself, that was good enough. However, the Fair Labor Standards Act permits employers to pay a subminimum wage only if they comply strictly with the requirements for taking a tip credit under Section 203M. The statute is explicit. To take the tip credit and thus pay employees less than minimum wage, the employer must demonstrate that all tips received by the employees were either, one, retained by the employees, or two, distributed through a valid tip pool to customarily and regularly tipped employees. This is not a guessing game. It is an affirmative defense, and as courts have repeatedly held, the burden of proving the tip credit lies squarely with the employer. No burden shifts, no presumptions apply, compliance must be proven, not inferred. Here, the Ridge failed to prove where the extra tip pool money went. The District Court found the physical evidence did not show where the extra tip pool money went. The District Court also found that neither Ms. Richards, the Ridge's bookkeeper, nor the server managers distributed the extra leftover tip pool money. That alone defeats the tip credit, an affirmative defense for which the Ridge had the burden of proof. There was some evidence, right, kind of various pieces of evidence that, you know, the bartender received some money from the tip credit even though they said they didn't, and this and that. Is it possible that that's at least a summary judgment issue about whether the affirmative defense was established? Your Honor, at trial, the evidence that was presented was the only witness the defense put on was their bookkeeper, who says she cannot testify as to whether bartenders got these tips because she didn't distribute them. That was a task that was allocated to the server managers. The only two server managers to testify, Plaintiff Weinstein being one of them, both testified they never distributed the extra tips to the bartenders. And then the only bartenders who testified, both testified they never received any of the extra tips. So it's unclear what evidence there would be to support even an inference that the tips actually ended up in the hands of bartenders. In response, the Ridge has relied heavily on a case called Kubiak to support its argument that the employer does not have the burden to prove where the tip pool money went. However, Kubiak involved a voluntary tip pool where employees voluntarily chose to share their tips with the kitchen staff, whereas the tip pool in this case was mandatory. The distinction is crucial because a voluntary tip pool like the one in Kubiak, the employer has no legal obligation or liability with regard to how or what an employee may voluntarily decide to do with their tip money. On the other hand, in cases involving mandatory tip pools like the one in this case, the employer bears the burden of proving all tips were lawfully distributed in compliance with the FLSA. This requires evidence of actual lawful distribution of the tip pool money, not just a finding that the employer didn't keep any of the tips. Can you remind me whether there was a difference, and if so, what that difference was between the evidence offered at summary judgment and the evidence offered at the bench trial? The evidence was very similar on summary judgment as well as at trial. There was pretty consistent. In nearly all of the tip pool cases, the issue is whether a particular employee qualifies as customarily and regularly tipped, and thus is a lawful tip pool participant. Here, we don't even get to that because as the district court found, there is no evidence showing who received the extra leftover tip money. Without knowing who received this money, the Ridge cannot carry its burden of proving all tips were in fact distributed to customarily and regularly tipped employees. Rather than requiring the Ridge to prove that tips were distributed to customarily and regularly tipped employees, the court focused on whether the Ridge itself retained the tips, but that's not the test. The burden is not merely to show that the employer didn't keep any of the tips for itself. It is to affirmatively prove that all tips were lawfully distributed. In other words, the district court presumed compliance based on a finding that the Ridge didn't pocket the tips, ignoring the statutory mandate that employers affirmatively prove all tips were distributed to customarily and regularly tipped employees. Do you know the ordinary course of practices on record keeping in this context? How does it happen with a restaurant that you would say does it right? One, the FLSA has specific record keeping requirements for tipped employees, but in the restaurant context, in 99% of these cases, the way it works is the tips that are earned that night are divided amongst the support staff. There is no extra. To the extent there is, it can be directly traced to employees' paychecks. I mean, there's no question. You can... I don't understand how. I guess that's what I'm asking. Because through discovery, you determine how much was contributed to the tip pool in total, and then they can show through a paycheck that if there was $100 collected, here are 10 employees' paychecks showing that they were paid $100 in tip share, which again, under the FLSA, that's part of the record keeping requirements for tipped employees. And you're saying that none of the employees' paychecks here showed that, right? No. You cannot trace this extra to the employees' paychecks. Do some businesses provide that tip distribution in cash? And at that point, does it become the employee's responsibility to report that, say, to the IRS? In terms of the employees who receive the tips? Right. No. I've never seen it, one, done in cash, because how can an employer then show that, you know, where the tips went or that certain employees actually received tips? Because in most of these cases, like this case, the support staff is also being paid $2.15, so they need a record of showing how much tip money they gave these people in order to meet not only their obligation to the support staff, but their obligation to the servers, because they took their money for the tip pool. Okay. I guess we should give you a chance to respond right now to the jurisdictional question if you want to. Oh, yeah, I hadn't planned to, but in terms of the jurisdictional issue, you know, it was fully briefed. The issue is that some of the plaintiffs who opted in, not the named plaintiff, their claims were dismissed. In the cases that, you know, have gone the other way on this, where... I heard it pretty clearly. You can't use 41A2 to dismiss less than the whole case, unless what you're talking about is all the claims against a particular defendant. What we have here is all the claims of a particular plaintiff and not all the claims against a particular defendant. But the test of the rule requires the dismissal of an action. I don't see how we can say that's what happened here. It seems maybe your best hope is... I mean, I don't know why lawyers and judges in this circuit keep doing this, keep relying on a rule that we have said repeatedly does not apply. I will at least say, though, that after that was done here, again, the district judge in granting the motion did not invoke the rule. So perhaps we construe that as the district court understood the law, and it would have been allowed to just drop a plaintiff under Rule 21, which would satisfy the final order. But it seems to me your argument in the jurisdictional briefing that we should just allow this is just flatly contrary to our precedence. If we're saying that what happened here was a 41A2 dismissal. Your Honor, and if I may, the way I understand the cases, too, is one of the alternatives, or the proper method is, is to amend the complaint. But here, where the plaintiff's... It's not a proper argument in Rule 21, too. Correct, Your Honor. And you are right that the court also didn't cite 41A and, to be quite frank, I didn't know that this was an issue until I was raised in this court, and I have now been... ...precedence before they do these things. Or the rule. The rule says action. And I'm out of time, Your Honor, if I... If you have something you want to say about it, you can. I'll throw you one lifeline question, which is, could you argue, and you may not need to because of Rule 21, that this is the mirror image of dismissing all claims against a defendant? Yeah, so that was my second part of this, is that the action is the opt-in versus the defendant, which that action was dismissed. And I believe I've reserved five minutes. ...extending an exception to the text of the rule to the mirror image situation. Of course, another way to deal with it is the way I suggested, which we just construed the district court at least understood it had the authority, and we're going to assume it was exercising that authority under Rule 21 since it didn't cite 41A. But again, Your Honor, I... Dismissing the action between that particular opt-in and that defendant is... It's a lot like dismissing the action for that particular defendant. Correct, Your Honor. And I believe I have five minutes for rebuttal. Thank you. Thank you. Mr. Schultz. May it please the Court, my name is Chad Schultz, and I represent the defendant, Apple Lee, in this matter. Just for a little bit of context, I represent a small restaurant that was basically a supper club that was open three nights a week.  You mentioned to yourself in your argument, can you address your view of the jurisdictional issue? I mean, I was assuming all along that the district judge had the authority to do what he did under the rules, and I didn't really see that as a significant issue. Well, he clearly had that authority under Rule 21. The motion asked him to do it under Rule 41. He didn't cite a rule. What should we do about that? 41, at least arguably, doesn't apply. If you look at the text of the rule, it's about the dismissal of an action. Now, we've said where it's all the claims against a particular defendant and the defendant gets dismissed, we construe that as a dismissal of the action. This is a collective action. No defendant got dismissed, only some plaintiffs did. Yes, sir. If you look at the mirror image, all their claims were dismissed. And apply our defendant rule to plaintiffs as well. But what do you think we should do? I like that approach. Your Honor, I understand that. You and your adversary, like whatever approach doesn't result in a remand and a repayment, this would be a problem. I agree with that 100%, Your Honor. This is the problem. Everybody wants to be a pragmatist and ignore the formalism until it gets to be a jurisdictional problem for us. Yes, I understand. Let me give just a little more background on how this restaurant worked. The server assistants, for example, were told at the beginning of their employment you will make $12 an hour, guaranteed. Now, what the restaurant did is they paid them restaurant minimum wage and then the remainder of that to the $14 an hour, for example, was to come from the tip pool. And the court concluded that that was appropriate, that they had given it to the right people. And then there was sometimes some leftover and sometimes not enough. If there's not enough to get you to $14 an hour, then the restaurant would step in and pay the additional money that the tip pool did not cover. However, there was occasionally nights, about half the nights, where there was extra money, $15, $13. And the bartenders had been contributors to the pool, but also the restaurant made the assumption and the conclusion that the bartenders, if anyone was getting shorted on fair compensation for that night, it was the bartenders. So if there's anything left over, there's either one or two bartenders and we will give that extra $13, whatever it is, to the bartenders. They would put it in an envelope in the safe with either the bartender's name on it or it would say bar. When the managers come in the next day, they would see the envelope in the safe that had cash in it and the cash would then be distributed to whoever worked the night before. And that's how that extra, and that is all of the evidence that was presented to the judge. So I guess the judge made a credibility determination that that had happened, right? He absolutely did make a credibility determination. And the pay records of the bartenders? Yes, absolutely. Well, two things. One, the pay records would be what they were paid, which is the hourly wage. What they were making in cash on tips was up to them to report internally, but it didn't show up on a payroll. It didn't show up on their checks, but it was ultimately between them and the IRS. All the tips were paid in cash. Let me make sure I understand procedural history here. There's some confusion about this in the brief. Okay. And that is, at summary judgment, the district court ruled that the Ridge properly notified the employees about the tip credit. Yes, sir. And the record could not support a finding that the Ridge distributed tips to employees other than those who customarily and regularly received tips. Yes, sir. And so the only thing then left for trial was whether the Ridge retained any of the tips. Right? Yes, whether any of that extra was retained by or whether it was distributed again to appropriate individuals. And so that's when the court ultimately came to this analysis. What could have happened with the money that was... The extra tips were in fact paid to the bartenders. Yes. That's the issue for the trial. For the trial. Right. And ultimately what the judge said is, okay, the evidence is that that money was kept in the safe. Limited people had access to the safe. And their testimony was, yes, that cash was put in there with either their name on it or a bar if there was only one person working at night. So we've got one of four things happened to that money. Either the bookkeeper herself stole the money, which there was no evidence of. Number two, that the managers who had access to the safe stole the money and didn't give it to the bartenders. No evidence of that. Number three, that the money was actually given lawfully to the bartenders. And that's what ultimately the court decided was the ruling. And then number four is possible or another possibility would be that the bookkeeper somehow slipped the money back to the house. And there was no evidence of that. I assume that there's no evidence that the bartenders made reports to the IRS of cash earnings. No, they ultimately would have to report all of the people there would have to report the cash earnings. No, I don't think they were supposed to. I'm just wondering if there's any evidence that they did. There was evidence that the plaintiff herself under-reported, but that wasn't really a big part of the case and ultimately wasn't part of the judge's conclusions. What were the remaining years of this alleged conduct? I believe it was, the lawsuit was filed I think in February of 2019. I can't remember the exact. And we used a two-year look back. But that never really became an issue either because the judge concluded that the money was properly distributed, that the house didn't keep any of it, and there's no evidence to believe that any of these other four options occurred. What about the record-keeping requirements that your friend on the other side suggests existed for the owners? They did keep records. Now, it's a small... Not about this disputed cash, right? No, that's not true. There were, each night, at the conclusion of the night, the money is put into this tip pool. The bookkeeper comes in the next day and works out a sheet for every single day and identifies who gets what and how much of the tip money gets distributed and there's a sheet that's audited every single morning after that night. Now, what I believe he's referencing is at the end, let's say there's $13.24 left, it would just say bar or it would say left. Right. I guess that's what I'm saying is the bookkeeper did not, if there was one bartender the night before, did not add $13 to the record of what that person had received in tips, right? I'm not sure what you mean because they would put in an envelope that bartender and then the bartender would get it the next time he or she worked. I understand all that but what I'm saying is there's no record of that having happened. There was record of it. There's a sheet every single day from that day and then it goes through all of the money that was in the tip pool. That's what I'm trying to understand. So you're saying that this kind of $13 would have been accounted for in the bookkeeper's description and records of what the bartender was paid for the night before? Yes. On that form that they fill out every morning? Yes. But recognize that's not like a W2 or I'm assuming a handwritten kind of It is. W2 column situation, right? Yes. And so you are saying that document accounts for although it doesn't say exactly how but it accounts for the $13 left in the envelope that said Susie or whoever the bartender was and he's saying no it doesn't. Am I right about that? There may be days where it just says bar. No, I'm not talking about the envelope. I'm talking about this handwritten That's what I'm saying that handwritten formula that sheet at the end of that there were days when it just said bar. Where it didn't have you know Mike Johnson's name associated with it. Weren't they supposed to sign the sheet whoever was distributing receiving weren't they supposed to sign but sometimes that did not happen which also led to some of the discrepancies? Yes. There were some days on that sheet that were not signed by the  but that's not a legal requirement that's just something they did in house. In terms of internal bookkeeping sometimes that was not again more difficult to trace where some of this money went. There was not any difficulty tracing where the money went. That was not an issue and it would have been nice if each of those sheets had a manager signing off on them but again that was just an internal practice not anything to do with a legal requirement. So you're saying that the money was always accounted for one way or the other on the sheet and then there was testimony about kind of how that money was  the cash portion of the leftover tips was handled and that ultimately the district judge resolved a credibility dispute over whether those managers and bookkeepers were telling the truth about what they did with it or not right?  and it ultimately came down to the bookkeeper saying yes which she does she designated the extra tips for payment to the bartenders after allocating the tip pool and would place the extra tips in a safe for shift managers to distribute she then discussed numerous documents that reflected extra tips were to be paid to the bartenders she testified she didn't keep the tips nor set them aside for the  and she testified that Campbell did not have access to the tips and that she had no reason to believe that a shift manager stole them all of which would support if you credit that testimony would support that the inference that the ridge paid the extra tips to the bartenders it credited that testimony so what we would have to say is that that was clear yes clear air that it's not plausible that that's what happened exactly and great deference is given to that district opinion this is obviously not an FLSA um enforcement action by the government but is the fact that they that were were the those records that were kept sufficient legally for purposes of FLSA requirements yes ma'am absolutely sufficient to write down say bar at the bottom as long as that money is all distributed in fact there's no requirement under FLSA that you would even have that sheet but you would have difficulty proving it without having records but the FLSA it requires that you distribute that to the appropriate people and that's all but um you're disputing that there's certain record keeping requirements that were  right there were no record keeping record no record keeping requirements that were violated that's correct and really at the end of the day this is a situation where we've got a disgruntled former manager and the record was clear that she had plenty of reason that she was angry whatever and with FLSA in this situation all she has to do is say not all the money was distributed I hereby represent everyone and as a  my client who was a small restaurant produced thousands and thousands of pages of documents went through years of  and at the end of the day it's the same conclusion we had on day one the house never kept any of this money it was all appropriately distributed but it is the FLSA the way it is now and I know that's not what the issue is here today but it makes it very difficult for a small restaurant to operate and gives great power to a disgruntled former manager who by the way was one of the people responsible for making sure FLSA was properly done with all of the people that reported to her so thank you very much we respectfully assert that the  opinion should be affirmed thank you thank you your honors I would like to address a couple points starting with the court's motion for summary judgment on page thirty five of the court's motion for summary judgment order the court says with respect to the final element defendants contend that they are entitled to summary judgment because plaintiffs failed to come forward with any record evidence to substantiate her claims that the  unlawfully retained a portion of the employees evidence tips the court goes on to say in making this argument however defendants ignore that they have the  to put forth evidence showing they operated a proper tip pool and complied with twenty nine U.S.C. 203 M2A and at the end of the court so the court goes on to deny the defendant's motion for summary judgment and at the end says that they upon the retention issue right no because they so what they moved for summary judgment on was that they did not retain any of the tips they distributed to the bartenders and the court goes on to say if they were not additional issues will need to be addressed and the first one of   questions is the testimony of the bookkeeper was precisely what I laid out earlier it was not your honor in fact on redirect when Mr. Schultz was redirecting Ms. Richards at the end he asked her but you didn't hand it to the bartender no I didn't so when you say you don't know what happened to it is that what you're saying yes I put it where it  and what happened to it after that I cannot tell you let me go through what I said earlier okay she testified did she not that she would designate the extra tips for payment to the bartenders after allocating the tip and place the extra tips in a safe for the shift managers to distribute right that's correct she then that testimony was credited she discussed numerous documents that reflected extra tips were to be paid to the bartenders correct they weren't that would that's what was supposed to happen according to that the server managers were supposed to give it to the bartenders correct she didn't keep the tips nor set them aside for the ridge right and Campbell did not have access to the tip she had no reason to believe that a shift manager stole right correct all of which the district court credited and gave rise to a reasonable inference that the tips were in fact paid to the bartenders that's what we have yes your honor that that finding was clearly erroneous well two parts to that your honor there is the court never found and in fact if you go to the court's order the court says exactly what the court's  are exactly what I said it says the court cannot conclusively trace the extra tips from the ridges safe to the bartenders plaintiff Weinstein testified she never hand delivered extra tips to the bartenders that's a summary judgment right was that the final yes your honor yes so what I sorry I should have been more clear so he based on the evidence before it that those payments actually went to the bartenders they weren't kept by reasonable inference your honor he he found he found may not conclusively and reasonable so he found that there was no evidence that it went to the bartenders and then inferred that it did when they have the burden to prove that it did I mean he says it is unclear who was ultimately responsible for distributing the extra tips to the bartenders and he says the documentary evidence introduced at trial does not track the extra tips from the safe to their destination so to infer that they then made it to the bartenders is an inference without any support because he's saying that the court found at trial what the rules were they had notified the employees these monies were being set aside there would have been an uprising if they weren't getting the extra tips your honor and the evidence actually also shows as we pointed out in our brief they used it to pay flowers they used it to pay a maintenance man that the employees themselves were taking their tips to pay for the flowers that's a permissible inference from this record the employer cannot delegate their responsibility to comply with the FLSA to their responsibility it's something that the staff has the it's tip pool money that doesn't belong to them you have to remember this is a restaurant with  it's not their money to the servers but you can't make a decision as one individual on a night that this is what I'm going to do with other people's  because not everyone can make that decision but if the staff itself made that decision they could do that and there is no evidence that the staff made that decision and again it would be the defendant's  to prove that and there is no evidence of that no but nor is it  defendant's  that      staff  decision         and again   to prove